UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05CV11970-JGD

)
ANN D. FERGUSON, Individually,)
and as Executrix of the ESTATE)
OF NEAL FERGUSON, )
)
       Plaintiff, ) **REQUEST FOR ORAL**
) **ARGUMENT**
v. )
)
GENERAL STAR INDEMNITY CO., )
)
       Defendant. )
)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF,
ANN D. FERGUSON'S MOTION FOR SUMMARY JUDGMENT**

**SUMMARY OF ARGUMENT**

The plaintiff, Ann D. Ferguson, individually, and as Executrix of the Estate of Neal Ferguson (hereinafter, "Ferguson" or "plaintiff"), commenced this insurance coverage recovery action against defendant, General Star Indemnity Co. (hereinafter, "General Star" or "defendant"), following a legal malpractice suit and resulting judgment against to the defendant's insured, attorney Steven Dean. The plaintiff was assigned the rights of the defendants insured (e.g., wrongful refusal of the duty to defend) and also pursues those of her own.

Defendant transferred this state court case to this Court.

In sum, the plaintiff submits that the plaintiff's underlying action against Dean and his law firm, Dean & Scott, P.C., pled allegations of negligence occurring after September 12, 1997, that being beyond the "retroactive date" of the General Star insurance policy, thereby triggering a duty to defend. Accordingly, having breached its duty to defend its policyholder, General Star is liable for the adverse judgment sustained against by its insured and all costs incurred for the defense of Dean, Scott and Dean & Scott, P.C. in the underlying action.

**STATEMENT OF UNDISPUTED FACTS**

**Malpractice**

Steven Dean ("Dean"), a lawyer, negligently represented, Ann Ferguson ("Ferguson" or "plaintiff"), as Executrix of the late Neal Ferguson's Estate, including the responsibility for advice regarding, preparation and filing of, the probate estate tax returns. Exhibit #1, Second Amended Complaint (Underlying case), Exhibit #2, Plaintiff's Proposed Findings of Fact, ¶20; Exhibit #3, Decision, pg. 1. Dean represented the estate from 1994 to 2000, failing to properly file returns, negotiate penalties, and otherwise assist clearing the estate's liabilities. Exhibits ##1-3.

After September 12, 1997, Dean failed to seek a compromise with the IRS/DOR as to interest on the unpaid taxes, which

continued to accrue.  Exhibit #3, pg. 7.  After September 12, 1997, financing to pay for the estate taxes had yet to be secured by Dean, contrary to representations, and further delays continued.  Exhibit #2, ¶68; Exhibit #3, pg. 1.  The estate taxes, penalties and interest due to the Federal government were not fully paid until March 23, 1998.  The state government taxes were not fully paid until July 2001.  Exhibit #2, ¶44.

During 2000 to 2001, Dean continued to receive, and forward to Ferguson, notices from the DOR. Exhibit #2, ¶¶21-22; Exhibit #3, pg. 1.  When notices of interest and penalties were issued, Dean told Ferguson that he would take care of them, including but not limited to, notices dated January 10, 2000, March 30, 2000, May 8, 2001, and July 10, 2001.  Exhibit #2, ¶¶48-49; Exhibit #3, pgs. 1, 7.

### Policy

General Star provided a claims-based Lawyers Professional Liability insurance policy to Dean & Scott, P.C., including coverage for both Dean and Scot individually, effective September 12, 2000 through September 12, 2001.  Exhibit #4, 12/6/01 General Star Denial of Coverage & Defense.  The policy declaration provided a retroactive date of September 12, 1997, stating:  "This policy does not apply to CLAIMS arising out of negligent act(s), errors, or omissions which took place prior to the Retroactive Date shown below. [9/12/97]"  Exhibit #5,

3

Declarations Page. Despite repeated demands, General Star refused to provide coverage for or a defense to Dean, Scott, or Dean & Scott, P.C. in the plaintiff's underlying state court action, Civil Action No. 01-01250. Exhibit #3; Exhibit #6, Plaintiff's 5/1/02 letter; Exhibit #7, 7/30/02 Opinion; Exhibit #8, 9/4/02 Denial of Coverage & Defense. A judgment against Dean was entered on May 7, 2005 for negligence awarding damages in the amount of $224,046. Exhibit #3, pgs. 1,7. Plaintiff's Proposed Findings of Fact were incorporated into that decision, with Dean conceding to such findings. Exhibit #2; Exhibit #3, pg. 1. The only disputed finding was ¶30 ("Over the course of 1994 through 1996, Ferguson made repeated requests to Steven Dean that he prepare the return for filing and take steps to pay the tax.").

Prior to the onset of this action, the plaintiff received an assignment of rights from Dean, and Attorney Scott, the defendant's insured, for the wrongful refusal to honor the duty to defend. Exhibit #9, Dean Assignment; Exhibit #10, Scott Assignment.

**ARGUMENT**

**Standard for Summary Judgment**

Summary judgment is appropriate in instances where the moving party has shown there are no genuine issues of material fact and, even in a light most favorable to the non-movant, the

4

record entitles the moving party to judgment as a matter of law. Fed. R. Civ.P. 56(c); see Six Flags, Inc. and TIG Insurance Co. v. Steadfast Insurance Co., 474 F. Supp. 2d 201, 2007 U.S. Dist. LEXIS 10579, \*\*6 (2007). Where facts are not in dispute, the interpretation and application of insurance policy language is a question of law. Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 61 (1st Cir. 2001).

**I. THE PLAINTIFF PLED FACTS AND ALLEGATIONS OF NEGLIGENCE OCCURRING AFTER THE SEPTEMBER 12, 1997 RETROACTIVE DATE TRIGGERING GENERAL STAR'S DUTY TO DEFEND ATTORNEY DEAN OF DEAN & SCOTT.**

Interpretation of policy language and whether an insurer has an obligation to defend its insured are questions of law. Bucci v. Essex Ins. Co., 393 F.3d 285; 2005 U.S. App. LEXIS 184; \*\*11 (1st Cir. 2005); see also Medical Professional Mutual Ins. Co. v. Weston OB/Gyn Associates, Inc., 14 Mass. L. Rep. 431; 2002 Mass. Super. LEXIS 94, \*6 (2002). The three cardinal rules in insurance language construction are these: (1) an insurance contract is to be construed according to the fair and reasonable meaning of its words, Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982);(2) exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured, Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431-432 (1965); and (3) doubts created by any ambiguous words or

provisions are to be resolved against the insurer, Cody, supra at 146.

   **A.   Insurer's Defense Obligation**

A liability insurer has a duty to defend its insured if the allegations of the complaint are reasonably susceptible of coverage.  See State Mutual Life Assurance Co. of America v. Lumbermens Mutual Casualty Co., 874 F. Supp. 451; 1995 U.S. dist. LEXIS 770, **13 (U.S. Dist. Ct. Mass. 1995); see also Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003).  The duty to defend is broader than the duty to indemnify, as an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded.  See State Mutual, supra at **13-14; see also Swift v. Fitchburg Mutual Ins. Co., 45 Mass. App. Ct. 617, 623 (1998), citing Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989).

Putting another way, an insurer must defend if the compliant is rationally subject to an interpretation that its allegations adumbrate a claim covered by the terms of the policy.  See Mt. Airy Ins. Co. v. Greenbaum, et al., 127 F.3d 15 (1st Cir. 1997).

> To give rise to a duty to defend, the underlying complaint need only show, through general allegations, a *possibility* that the liability claim falls within the insurance coverage.  There is no requirement that the

6

> facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.

Dash v. Chicago Ins. Co., 2004 U.S. Dist. LEXIS 17309 at *25 (U.S. Dist. Ct. Mass. 2004). (Court found breach of duty to defend against malpractice provider because the legal malpractice count alleged in the complaint at least contemplated a "rendering or failure to render" legal services separate from any such acts committed while the insured was subject to an exclusionary period).

The duty to defend is based not only on the facts alleged in the complaint, but also on those facts that are known by the insurer. See Watts Water Technologies, Inc. et al. v. Fireman's Fund Insurance Company et al., 22 Mass. L. Rep. 659 (2007), citing Boston Symphony Orchestra, Inc. v. Commercial Union Ins., 406 Mass. 7, 10-11 (1989).

While the insured bears the initial burden of proving that a claim falls within the grant of coverage, the insurer bears the burden of demonstrating that any potential exclusion applies. See Mt. Airy Ins. Co., 127 F.3d at 19. Exclusions from coverage are strictly construed against the insurer. Id., citing Sterilite, 17 Mass. App. Ct. at 321 n.10.

Only in instances when the allegations lie expressly outside the policy coverage and its purpose is summary judgment for the insurance company proper. See Medical Professional

Mutual Insurance Company, 14 Mass. L. Rep. 431 at *6; see also Lusalon, Inc. v. Hartford Acc. & Indem. Co., 400 Mass. 767, 773 (1987), quoting from Terrio v. McDonough, 16 Mass.App.Ct. 163, 168 (1983).

> What is not permitted is that an insurer shall escape its duty to defend the insured against liability arising on the face of the complaint and policy, by dint of its own assertion that there is no coverage in fact: the insurer then stands in breach of its duty even if the third party fails in the end to support any such claim of liability by adequate proof.

Medical Professional Mutual Insurance Company, 14 Mass. L. Rep. 431 *6-7 citing Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 324, 458 N.E.2d 338 (1983).

A duty to defend must be honored and defense undertaken even if the underlying claim is baseless, as it is the *claim* (emphasis added) that determines the insurer's duty to defend. See Great Northern Ins. Co. v. Paino Assoc., et al., 369 F. Supp.2d 177 (2005).

Moreover, that some or even many of the underlying claims may fall outside the policy coverage, does not excuse the insurer from its defense obligation. Dilbert v. Hanover Ins. Co., 63 Mass. App. Ct. 327, 331 (2005)(citations omitted).

An insurer can escape the duty to defend only by proving that it will have no legal duty to indemnify any of the claims of the insured party that may result from the action -- in

8

essence, proving that the claims at issue are not covered as a matter of law. See Baer v. Western World Ins. Co., 12 Mass. L. Rep. 721, *7-8; 2000 Mass. Super. LEXIS 570 (2000).

Where the exclusionary language permits more than one rational interpretation, that view most favorable to the insured is to be taken. See Mt. Airy Ins. Co., 127 F.3d at 19, citing Boston Symphony Orchestra, Inc., 406 Mass. 7, 12 (1989).

**B.  Coverage Denial**

The crux of the underlying state civil action regarded Dean's failure to file timely tax returns, request deferment, mitigate damages, and advise about the consequences of untimely tax payment. See Exhibit #1. The Complaint not only included charges that Dean failed to file federal and state tax returns that were due in 1994, but, most importantly for purposes of this motion, that (1) the federal taxes *were not paid* until March 3, 1998 and (2) state taxes *were not paid* until July 2001. Thus, Dean's alleged negligence continued well after September 12, 1997 retroactive date. See Exhibit #1, ¶¶28-30.

Significantly, Ferguson's underlying Complaint also asserted that Dean failed to liquidate estate property timely, failed to request extensions, and failed to contact the IRS regarding a delay, waiver, or abatement of taxes. See Exhibit #1, ¶¶13-19, 22. The plaintiff also alleged that she repeatedly requested Dean to file taxes following the deadline, and that,

9

because of this failure, she was forced to obtain financing in March 1998 to pay amounts due taxing authorities. See Exhibit #1, ¶¶18, 26. It is undisputed that Ferguson continued to pay interest on these loans beyond the retroactive date. See Exhibit #3.

General Star denied coverage to Scott & Dean on December 6, 2001, asserting that the alleged negligent acts and omissions occurred before the policy's retroactive date (September 12, 1997). See Exhibits ##4, 8. In marked contrast, however, General Star's counsel's opinion suggests its denial to defend was erroneous. As counsel advised:

> I do note ¶22 of the complaint, which alleges promises by the defendant [Dean] in 2001 timeframe that he would 'take care of' Department of Revenue notices of unpaid amounts. Apparently, this is the failure to communicate regarding $18,000 tax due alleged in plaintiff's counsel's 5/1/02 letter. Also, ¶¶23-24 could *adumbrate* [emphasis added] [a] claim of delay securing financing for tax obligations until well after the retro date.

See Exhibit #7. This admission confirms that General Star is liable for breach of its duty to defend.

General Star wrongly dismissed that Dean's negligence could potentially include his ongoing failure to advise his client, seek extensions, and otherwise mitigate damages to the estate, all acts and omissions that occurred after the retroactive date. See Exhibits ##1, 2, 3, 4, 6, 7, 8. General

Star wrongfully declined to defend Dean solely based upon its restricted viewing of the allegations, ignoring its broad responsibilities to defend.[1]

Essentially, it is the insurer's position that all alleged malpractice arose out of Dean's failure to timely file tax returns. Doing so, however, ignores paragraphs 26-30 of the Complaint and paragraphs 68 and 78 of the findings of fact that speak to Dean's failure to pay for the taxes and inability to secure financing to fund such, as well as Dean's continuing obligation to Ferguson on other matters related to the estate. See Dash, supra at *22-24 (a lawyer's honoring of his continuing

---

[1] General Star Indemnity Company.

I. Insuring Agreement.

A. Coverage-Professional Liability:

To pay on behalf of the INSURED all sums in excess of the deductible that the INSURED shall become legally obligated to pay as DAMAGES because of CLAIMS first made against the INSURED and reported to the COMPANY during the POLICY PERIOD. This Policy applies to actual or alleged negligent acts, errors, omissions, or PERSONAL INJURIES arising out of professional services rendered or which should have been rendered for others in the INSURED'S capacity as a Lawyer, Real Estate Title Insurance Agent or Notary Public.

For this Coverage to apply the following conditions must be satisfied:

1) the INSURED had no knowledge prior to the effective date of this Policy of any actual or alleged negligent act, error, omission, circumstance, or PERSONAL INJURY likely to give rise to a CLAIM.
2) CLAIM is first made against the INSURED and reported to the Company during the POLICY PERIOD, or and EXTENDED CLAIMS REPORTING PERIOD subject to the provisions set forth in **SECTION VI. OPTION TO EXTEND CLAIMS REPORTING PERIOD.**
3) the actual or alleged negligent acts, errors, omissions, or PERSONAL INJURIES occurred subsequent to the retroactive date as referenced on the Declarations page.

The retroactive date on this policy is September 12, 1997.

ethical duties is unto itself a legal service the lawyer provides to his clients).

Specifically, the underlying complaint alleges the following negligent omissions occurring <u>after</u> the 1997 retroactive date. First, the attorney-client relationship continued. Secondly, Dean failed to arrange for payment of federal and state taxes after the retroactive date. Further, payment of the federal taxes was not resolved <u>until</u> March 3, 1998, and the state liabilities were not closed until July 2001. Dean also failed to liquidate property timely to pay the taxes, and he <u>never</u> advised the plaintiff of the effects of failing to file timely, all potentially occurring after September 12, 1997. <u>See</u> generally, <u>Exhibits ##1-3</u>.

Where, as here, an insurer has reason to know from the complaint or otherwise that a claim may be adumbrated, the duty to defend applies. <u>See</u> <u>Open Software Foundation v. USF&G</u>, 2001 U.S. Dist. LEXIS 121019, at *15-16. Here, General Star was tasked to compare not only the allegations of the complaints to the policy terms, but also to assess the information asserted in the demand letters from counsel. <u>Id</u>. at 16. Further, plaintiff's counsel sent correspondence to General Star raising factual circumstances alleged by the complaint that clearly adumbrated potential claims distinctly occurring after the retroactive date of September 12, 1997. <u>See</u> <u>Exhibit #6</u>.

In support of its denial, General Star is likely to say that the malpractice all arose out of the initial failure to file returns and that the phrase "arising out of" generally is given broad scope.[2] However, this reliance is wayward, as it is at least arguable that Dean may have committed separate and distinct acts of malpractice and/or potential ethical violations subsequent to the retroactive date.

While it also may be that Massachusetts courts can apply a "but for" test to determine whether a claim "arises out of" an act or failure to act, see Dash v. Chicago Ins. Co., at *21, insofar as a "but for" test is appropriate, the relevant inquiry posed herein is whether Dean's acts after September 12, 1997 as alleged by Ferguson, were *potentially* an independent bases for negligence. See Id. at *21-23.

It is significant to note that Dean's fiduciary duties to his client did not cease after the returns were filed. His continuing duties included liquidating property to pay such debts, to account, and to inform the client of its tax obligations. Until his representation ceased after 2000, Dean's actions were at play in the underlying complaint. To the extent Dean may have committed ethical violations, such as

---

[2] The General Star Declaration Page for Dean & Scott, P.C. dated 9/16/99 states: RETROACTIVE DATE: This policy does not apply to CLAIMS arising out of negligent act(s), error(s), or omission(s) which took place prior to the Retroactive Date shown below….
                              Retroactive Date: 9/12/97."

13

misrepresentation of the status of the tax liability and his conduct in timely resolving such, the insurer should have a separate duty to defend the insured[3].

The issues herein are illustrated by a Massachusetts decision analogous to the present case, where there was no dispute that defendant professional treated and diagnosed the plaintiff in February and April of 1996, before the effective date of the malpractice policy. See Medical Professional Mutual Insurance Company, 14 Mass. L. Rep. 431 at *7. The plaintiff's amended complaint raised the issue of whether the medical provider and the individual doctor both breached a continuing duty to investigate a medical issue present on February 15, 1996 and April 26, 1996 and whether that duty continued through at least March 1997. Id. Whether a continuing duty existed through at least March 1997 was determined to be an issue of fact for

---

[3] Ferguson specifically alleged that she incurred significant interest charges and penalties due to Dean's omissions, necessitating a loan to pay the escalating tax debt. See Exhibits ##1-3.

It is well recognized that the time of harm can provide a coverage trigger on claims-made policies. See Robert E. Keeton, Insurance Law § 5.10, citing Eagle-Pitcher Industries, Inc. v. Liberty Mut. Ins. Co., 523 F.Supp. 110 (1st Cir. 1981) (establishing the manifestation of harm as a coverage trigger for claims-made policy rather than the initial negligent act exposing individuals to harm); Hendrickson v. Sears, 365 Mass. 83 (1974)(attorney's malpractice coverage triggered upon notice of the harm, not when the initial negligent act took place). Other jurisdictions follow this rule. See Am. Home Assur. Co. v. Dykema, 811 F.2d 1077 (7th Cir. Mich. 1987) quoting Employers Mut. Liability Ins. Co. v. Michigan Mut. Auto Ins. Co., 101 Mich.App. 697, 703 (1980) ("[T]he time when the complainant is damaged, rather than the time of the negligent act, is the point at which responsibility accrues under an indemnity policy.")

the fact finder.  Id., citing Shannon v. Ramsey, 288 Mass. 543, 547 (1934).

There the insurer relied upon a letter submitted to the Medical Malpractice Tribunal, which stated "that the negligence occurred in April 1996, when Dr. LeMaitre failed to have a core or excisional biopsy done on a breast lump that had been present for at least two and one-half months." Id. at 7-8.  However, the insurer's reliance was deemed inadequate to demonstrate with conclusive effect that the plaintiffs could not establish a claim within the policy.  Id., citing Sterilite Corp., 17 Mass. App. Ct. at 323.

Ferguson alleged here harm from Dean's negligence that continued after the retroactive date, her amended complaint was reasonably susceptible of an interpretation that it stated a claim covered by the policy coverage.  Accordingly, it is clear that General Star defaulted on its broad duty to defend its policyholder in the underlying action.

**II. GENERAL STAR IS LIABLE TO PLAINTIFF FOR THE ADVERSE JUDGMENT SUSTAINED BY ITS INSURED AND ALL COSTS OF DEFENSE DUE TO ITS DEFAULT ON ITS DUTY TO DEFEND.**

An insurer defaulting on its duty to defend is bound by the judgment against the insured.  See Crane Service & Equipment Corp. v. USF&G, 22 Mass. App. Ct. 666, 670 (1986); and it is further liable for reasonable defense costs incurred by its insured.  See Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93,

97 (1997). Said insurer is also responsible to pay attorney fees expended in the coverage action to establish its defense obligations. Rubenstein v. Royal Ins. Co. of Am., 44 Mass. App. Ct. 842, 850 (1998).

As a reasonable interpretation of the plaintiff's underlying allegations include negligent acts occurring after the retroactive date of September 12, 1997, General Star is liable for Dean's defense costs (assigned to plaintiff), plaintiff's attorney fees in pursuing this action, and the underlying judgment of $224,046.41, plus interest, costs.

**CONCLUSION**

Based upon the foregoing, plaintiff, Ann D. Ferguson, individually, and as Executrix of the Estate of Neal Ferguson, respectfully submits that this Court grant her motion for summary judgment.

    ANN D. FERGUSON, individually, and as Executrix of the ESTATE OF NEAL FERGUSON
By her attorney,

/s/ David M. O'Connor

David M. O'Connor
BBO No. 544166
O'CONNOR & ASSOCIATES, LLC
100 State Street, 4th Floor
Boston, MA  02109
(617) 723-7201

DATED:  November 7, 2007

**CERTIFICATE OF SERVICE**

 I, David M. O'Connor, hereby certify that a true copy of this document was served on all parties of record this 7th day of November, 2007.

        /s/ David M. O'Connor
        _____
        David M. O'Connor

**RULE 7.1 CERTIFICATION**

 The parties have conferred and have been unable to resolve or narrow this coverage dispute, which is likely dispositive of the entire case.

        /s/ David M. O'Connor
        _____
        David M. O'Connor