# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  05-11970-JGD

| |
|---|
| **ANN D. FERGUSON, Individually and as Executrix of the Estate of Neil Ferguson,** |
| **Plaintiff,** |
| **v.** |
| **GENERAL STAR INDEMNITY COMPANY,** |
| **Defendant.** |

## DEFENDANT GENERAL STAR INDEMNITY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Defendant General Star Indemnity Company hereby submits this Memorandum of Law in Support of Motion for Summary Judgment.

## I.  INTRODUCTION

This is an insurance coverage dispute, wherein the Plaintiff Ann Ferguson claims that the Defendant General Star Indemnity Company breached its duty to defend and indemnify its insured, Attorney Steven Dean, against the Plaintiff's underlying legal malpractice lawsuit.  In the underlying action, the Plaintiff sued Attorney Dean for failing to timely file estate tax returns and for failing to make an election under 26 U.S.C. § 6166 to defer the payment of estate taxes that were due on behalf of her brother's estate.  The Defendant General Star Indemnity Company disclaimed coverage on the grounds that all of the underlying claims arose out of Attorney Dean's negligent failure on or before October 27, 1994 to timely file the estate tax returns and make an election pursuant to

section 6166 to defer the payment of taxes that were due, and that such negligent acts, errors or omissions took place nearly three years before the retroactive date of the policy and, therefore, were expressly excluded from coverage. The Plaintiff subsequently obtained judgment against Attorney Dean and commenced this action against Defendant General Star Indemnity Company as assignee of Attorney Dean's rights under the General Star policy, wherein the Plaintiff seeks to reach and apply the Policy (Count I), and asserts claims for breach of contract (Count II), and violation of Mass. Gen. L. ch. 93A and ch. 176D (Count III).

## II. STATEMENT OF UNDISPUTED FACTS

1.     In or about August of 2000, Attorney Steven I. Dean and David O. Scott submitted a Lawyers Professional Liability Application for Claims Made Insurance to Defendant General Star Indemnity Company dated August 21, 2000 (the "Application"). Zayotti Affidavit, Exh. A.

2.     Attorneys Dean and Scott completed paragraph 26 of the Application as follows:

> After inquiry of each person proposed for insurance, is the Applicant aware of any circumstance(s), error(s), omission(s) or offense(s) which may result in a claim being made against the Applicant or any of its predecessors in business or any of the past or present partners, directors, officers or employees?          ___ Yes   x  No

Id. at 6.

3.     On or about September 13, 2000, the Defendant General Star Indemnity Company ("General Star") issued a Lawyers Professional Liability Insurance Policy No. IYA 834511A (the "Policy") to the named insured Dean and Scott. Zayotti Affidavit, Exh. B (Lawyers Professional Liability Insurance Declarations).

2

4. The Policy Period was from September 12, 2000 to September 12, 2001.

Id.

5. The Policy provided, in relevant part, as follows:

    4. **RETROACTIVE DATE:** This policy does not apply to CLAIMS arising out of negligent act(s), error(s), or omission(s) which took place prior to the Retroactive Date shown below. The absence of a date means that the policy does not afford coverage for negligent act(s), error(s), or omission(s) committed prior to the inception date stated in Item 2 above.

              Retroactive date:    9/12/1997

Id.

6. Additionally, the Policy provided as follows:

    A. **COVERAGE-PROFESSIONAL LIABILITY:**

    . . .

    For coverage to apply, the following conditions must be satisfied:

    1) The INSURED had no knowledge prior to the effective date of this policy of any actual or alleged act, error, omission, circumstance or PERSONAL INJURY that could be reasonably expected to give rise to a CLAIM(S);

    . . .

    3) The actual or alleged acts, errors, omissions or PERSONAL INJURIES occurred subsequent to the retroactive date referenced on the Declarations page and before the end of the POLICY PERIOD.

Id. at 1.

7. Finally, the Policy provides, in relevant part, that General Star "has no duty to defend a CLAIM(S) if this insurance does not apply. . . ." Id. at 2.

3

8.     On August 21, 2001, Attorney Dean was served with a summons and complaint in the underlying matter entitled, <u>Ann D. Ferguson v. Steven Dean, et al.</u>, Norfolk Superior Court Civil Action No. 2001-01250. <u>Zayotti Affidavit</u>, Exh. C, at 30 (Dean Deposition).

9.     In the underlying complaint, Ms. Ferguson alleged, in relevant part, that she had retained Attorney Dean to represent her as executrix of her brother's estate, including the preparation and completion of federal and state estate tax returns that were due to be filed on October 27, 1994. Ms. Ferguson further alleged, in relevant part, that Attorney Dean failed to timely file the estate tax returns, and failed to make an election under the provisions of section 6166 of the Internal Revenue Code to defer the payment of taxes. <u>Zayotti Affidavit</u>, Exh. D, at ¶¶ 5, 14, 16 (underlying Ferguson complaint).

10.    Attorney Dean first gave notice to General Star of the underlying claims made by Ann Ferguson by letter dated August 21, 2001. <u>Zayotti Affidavit</u>, Exh. C, at 22-23, 26 (Dean Deposition); Exh. E (Dean letter dated August 21, 2001).

11.    In early September, 2001, and still within the twenty-day period for responding to the complaint in the underlying Ferguson matter, General Star contacted Attorney Dean by telephone and advised him that General Star denied coverage under the Policy. <u>Zayotti Affidavit</u>, Exh. C, at 29-30 (Dean Deposition); Exh. F (File Activity Log 9/7/01 entry).

12.    Thereafter, in a three-page letter dated December 6, 2001, General Star employee Dean W. Clause confirmed in writing to Attorney Dean that General Star denied coverage of the underlying Ferguson Claim on grounds that "the acts giving rise

to the claim appear to fall prior to the retroactive date of the policy." Specifically, General Star reasoned as follows:

> The returns were first due on October 27th, 1994. The returns were ultimately filed on July 5th, 1996. The alleged failure to properly file the returns, alleged failure to request extension to file returns and alleged failure to advise the plaintiff of the consequences of untimely filing all appear to occur some time prior to the retroactive date of September 12, 1997."

Zayotti Affidavit, Exh. G, at 3 (General Star letter dated December 6, 2001).

13.     Additionally, General Star notified Attorney Dean that General Star reserved all of its rights under the Policy, including but not limited to "the right to conduct further investigation and evaluation upon receipt of any new and/or additional information suggesting that any of the conclusions above are incorrect. If you believe that our conclusions are incorrect, please notify us forthwith to discuss the matter." Id.

14.     Attorney Dean did not challenge General Star's denial of coverage or otherwise provide General Star any additional information or documents to suggest that General Star's denial of coverage was incorrect. Zayotti Affidavit, Exh. C, at 35 (Dean Deposition).

15.     By letter dated May 1, 2002, Ms. Ferguson's counsel challenged General Star's declination of coverage. Zayotti Affidavit, Exh. H (Knudsen letter dated May 1, 2002).

16.     On or about May 21, 2002, General Star referred the matter to its Third Party Administrator, Summit Risk Services, Inc. ("Summit") for further review and response. Summit Claims Adjuster Lawrence Burns reviewed the coverage issue and concluded that Defendant General Star's disclaimer was correct. Zayotti Affidavit, Exh.

I (Claims Notes 05/21/02 entry); Exh. F (File Activity Log 05/14/02 and 06/05/02 entries).

17.     By letter dated June 6, 2002, Summit retained Attorney David D. Dowd to render a coverage opinion, and to specifically "assess the case and determine whether . . . General Star had coverage, specifically whether they had a duty to defend or not." Zayotti Affidavit, Exh. J (Summit letter dated June 6, 2002); Exh. K, at 11 (Dowd Deposition).

18.     Attorney Dowd specializes in insurance coverage. Zayotti Affidavit, Exh. K, at 8 (Dowd Deposition).

19.     By letter dated July 30, 2002, Attorney Dowd rendered a 5½ page coverage opinion to Summit, fully analyzing the question of coverage and citing the relevant policy provisions and case law, wherein Attorney Dowd recommended an "unequivocal reiteration of GenStar disclaimer." Zayotti Affidavit, Exh. L, at 6 (Dowd letter dated July 30, 2002).

20.     On behalf of General Star, Summit sought an analysis from Attorney Dowd and considered the issue before disclaiming coverage. Zayotti Affidavit, Exh. K, at 24 (Dowd Deposition).

21.     By letter dated September 4, 2002, Summit reiterated General Star's disclaimer of coverage pursuant to Attorney Dowd's recommendation. Zayotti Affidavit, Exh. M (Summit letter dated September 4, 2002).

22.     By letter dated August 10, 2004, counsel for Ms. Ferguson requested reconsideration of General Star's disclaimer of coverage. Zayotti Affidavit, Exh. N (Knudsen letter dated August 10, 2004).

23.     On or about August 4, 2004, Attorney Scott was added as a party defendant to the underlying Ferguson matter.  <u>Zayotti Affidavit</u>, Exh. O (Second Amended Complaint); Exh. P (Scott letter dated August 27, 2004).

24.     By letter dated August 27, 2004, Attorney Scott gave General Star notice of the underlying Ferguson claim against him.  <u>Zayotti Affidavit</u>, Exh. P (Scott letter dated August 27, 2004).

25.     In response to Attorney Scott's August 27th letter, General Star contacted Attorney Scott by telephone and advised him that coverage was denied for the same reasons previously stated with respect to the denial of coverage as to Attorney Dean. Prior to having been added as party defendant in the underlying litigation, Attorney Scott had received a copy of the General Star letter dated December 6, 2001 stating the reasons for the disclaimer of coverage as to Attorney Dean.  <u>Zayotti Affidavit</u>, Exh. Q (Dowd letter dated November 5, 2004); Exh. R, at 27-31, 57-58 (Scott Deposition).

26.     By letter dated September 20, 2004, from Attorney Dowd to Summit, Attorney Dowd sent Summit a proposed reply to the August 10th, 2004 letter of counsel for Ms. Ferguson, wherein Attorney Dowd opined that "the challenge is without merit and probably a last-ditch shakedown.  Your disclaimer is solid."  <u>Zayotti Affidavit</u>, Exh. S (Dowd letter dated September 20, 2004).

27.     By letter dated September 20, 2004, from Attorney Dowd to counsel for Ms. Ferguson, Attorney Dowd reiterated General Star's disclaimer of coverage on the grounds that the claim was a "known loss in progress" and that "the Declarations' prohibition of coverage for claims arising out of acts, errors or omissions which took

place prior to the September 12, 1997 retroactive date are utterly preclusive of coverage. . . ." Zayotti Affidavit, Exh. T (Dowd letter dated September 20, 2004).

28.     On November 4, 2004, Attorney Scott entered into a Settlement Agreement and Release with Ms. Ferguson, whereby the parties agreed, in relevant part, that Attorney Scott would assign all of his rights under the Policy to Ms. Ferguson in exchange for which Ms. Ferguson would refrain from levying and executing on any judgment that she might obtain against Scott in the underlying matter. Zayotti Affidavit, Exh. U (Scott Settlement Agreement and Release and Assignment).

29.     In November, 2004, the Court granted Attorney Scott's motion for directed verdict, as a result of which the underlying claims against Attorney Scott were dismissed. Zayotti Affidavit, Exh. R, at 17 (Scott Deposition).

30.     On September 24, 2004, Attorney Dean entered into a Settlement Agreement and Release with Ferguson, whereby the parties thereto agreed that in the event Ferguson prevailed against Attorney Dean, Attorney Dean would assign all of his rights under the Policy to Ferguson and Ferguson would release Attorney Dean from paying any such judgment. Zayotti Affidavit, Exh. V (Dean Settlement Agreement and Release and Assignment).

31.     On May 9 through 11, 2005, Ferguson's underlying claims against Attorney Dean were tried, jury waived, before the Norfolk Superior Court (Brady, J.), and the Court issued its Memorandum of Decision and Order for Judgment on May 20, 2005. Zayotti Affidavit, Exh. X (Memorandum of Decision).

32.     In its Memorandum of Decision, the Court found as follows:

a.      "The returns were due on October 27, 1994, nine months after Mr. Ferguson's death." <u>Zayotti Affidavit</u>, Exh. W, at 2 (Memorandum of Decision).[1]

b.      Attorney Dean "held himself out as qualified to prepare and file estate tax returns." <u>Id.</u>

c.      In July, 1994, Attorney Dean "prepared a handwritten draft of the federal return, form 706." <u>Id.</u>

d.      Ms. Ferguson reviewed the draft return "and made several suggestions. . . ." <u>Id.</u>

e.      "Although the changes could have been easily accomplished, the returns were not typed and ready for filing until mid-1995." <u>Id.</u>

f.      "[T]he returns were not filed until July, 1996." <u>Id.</u>

g.      "As the October 27, 1994 deadline for filing approached, the acute problem was how to pay the taxes (in excess of $300,000) due with the returns." <u>Id.</u>

h.      Attorney Dean told Ms. Ferguson that "she had to pay the taxes at the time of filing." <u>Id.</u> at 3.

i.      Attorney Dean "did not consider the possibility of seeking a deferment of taxes." <u>Id.</u>

j.      "Section 6166(a)[2] of the Internal Revenue Code (26 U.S.C. § 6166) provides that if the value of an interest in a closely held business included in the estate

---

[1] Pursuant to 26 U.S.C. § 6075(a), "[r]eturns made under section 6018(a) (relating to estate taxes) shall be filed within 9 months after the date of the decedent's death." 26 U.S.C.A. § 6075.

[2] 26 U.S.C. § 6166 provides, in relevant part, as follows:

**§ 6166. Extension of time for payment of estate tax where estate consists largely of interest in closely held business**

**(a) 5-year deferral; 10-year installment payment.--**

exceeds 35% of the adjusted gross estate, the executor may elect to pay the tax on such assets in 2 or more (but not exceeding 10) equal installments. If the executor makes this election, the first installment may be delayed for five years, with each succeeding installment payment due one year thereafter. Interest on the unpaid portion would be due and payable annually. If the estate qualifies, full payment of federal taxes may be deferred as much as 15 years." Id.

      k.      Attorney Dean "fell below the standard of care of the average attorney practicing in this area in failing to consider and utilize section 6166 to obtain time for the estate to raise money to pay the taxes. An attorney competent in the preparation and filing of estate tax returns would have known in 1994[3] that section 6166 was likely available to defer the filing of the returns and the payment of a substantial portion of the taxes, and would have advised [Ms. Ferguson] to take that route." Id. at 4.

      l.      "The consequences of the late filing and payment were severe." Id. at 5.

---

(1) **In general.**--If the value of an interest in a closely held business which is included in determining the gross estate of a decedent who was (at the date of his death) a citizen or resident of the United States exceeds 35 percent of the adjusted gross estate, the executor may elect to pay part or all of the tax imposed by section 2001 in 2 or more (but not exceeding 10) equal installments.

(2) **Limitation.**--The maximum amount of tax which may be paid in installments under this subsection shall be an amount which bears the same ratio to the tax imposed by section 2001 (reduced by the credits against such tax) as--

(A) the closely held business amount, bears to

(B) the amount of the adjusted gross estate.

(3) **Date for payment of installments.**--If an election is made under paragraph (1), the first installment shall be paid on or before the date selected by the executor which is not more than 5 years after the date prescribed by section 6151(a) for payment of the tax, and each succeeding installment shall be paid on or before the date which is 1 year after the date prescribed by this paragraph for payment of the preceding installment.

26 U.S.C.A. § 6166.

[3] Pursuant to 26 U.S.C. § 6166(d), "[a]ny election under subsection (a) shall be made not later than the time prescribed by section 6075(a) for filing the return of tax imposed by section 2001. . . ."

m.  The IRS was fully paid by March 23, 1998 and the Massachusetts Department of Revenue was fully paid in July 2001. Id.

n.  The IRS and Massachusetts Department of Revenue assessed penalties and interest in the grand total amount of $239,046.41. Id. at 6.

o.  "Had [Attorney Dean] taken advantage of section 6166, no penalties would have been assessed, and interest would have been limited to approximately $15,000.00." Id.

p.  "Thus, the estate suffered damages as a result of [Attorney Dean's] negligence in the amount of $224,046.41." Id.

33.  In response to a subpoena duces tecums served by the Defendant in the present case on Attorney Dean, Attorney Dean conducted a search for his records relating to the underlying action, and discovered that "all related files had been moved to [his] residence in early spring 2006 and stored with other closed files." Dean Affidavit, at ¶¶ 2-3.

34.  Additionally, Attorney Dean discovered that all of his files pertaining to the underlying Ferguson matter were "mistakenly shredded along with other closed files" sometime between April and June, 2006 when Attorney Dean "had hired [his] son to destroy by shredding a number of boxes of closed files, some dating back to 1984." Id. at ¶¶ 4-6.

35.  Prior to October, 1994, Attorney Dean was aware of section 6166 of the Internal Revenue Code whereby an estate may elect to defer the payment of taxes. Zayotti Affidavit, Exh. C, at 57 (Dean Deposition).

36.     Prior to October, 1994, Attorney Dean did not review section 6166 with a view towards determining whether it might be available to the Plaintiff to defer the payment of taxes under the circumstances of her case. Id. at 57-58.

37.     Prior to October, 1994, Attorney Dean did not do any legal research to determine whether section 6166 might be available to the Plaintiff to defer the payment of taxes under the circumstances of her case, or to determine whether there might have been any other basis for relief on behalf of the Estate of Neil Ferguson. Id. at 58, 60.

38.     Prior to October, 1994, Attorney Dean did not consider seeking any other sort of extension on behalf of the Plaintiff to file the estate tax returns. Id. at 59-60.

39.     Prior to the Estate Tax Return filing deadline on October 27, 1994, Attorney Dean was aware and advised Ms. Ferguson that the Estate of Neil Ferguson would be assessed "substantial penalties and interest" if the estate tax returns were not filed by the deadline. Zayotti Affidavit, Exh. X, at 41 (Ferguson Deposition); Exh. C, at 61 (Dean Deposition).

40.     Prior to the September 12, 1997 Retroactive Date of the Policy, Attorney Dean was aware that the Estate of Neil Ferguson "was exposed to penalties and interest" and/or was incurring penalties and interest. Zayotti Affidavit, Exh. C, at 63, 67 (Dean Deposition).

41.     Attorney Dean admitted that he "thought of it as a possibility" that the circumstances under which the Estate of Neil Ferguson was being assessed penalties and interest might lead to claims being made against him, but testified that he did not think of that possibility until he received formal allegations thereof from Attorney Knudsen. Id. at 65-66.

42.     In an effort to raise the funds needed to pay the estate taxes, Ms. Ferguson listed with a real estate broker a number of parcels of real estate that she inherited from her brother, but she was unable to sell those properties because the "market was very still at that point, no bites whatsoever." Zayotti Affidavit, Exh. X, at 43 (Ferguson Deposition).

43.     Attorney Dean handled negotiations for the potential sale to George Winslow of two parcels of real estate located at 95 and 95A Main Street, Foxborough, Massachusetts, but those negotiations "went on and on" and eventually "came to nothing". Id., at 45-46 (Ferguson Deposition).

44.     Thereafter, Attorney Dean introduced Ms. Ferguson to land developers known as White & Company who were interested in purchasing the undeveloped parcel of land known as 95A Main. Ms. Ferguson did not like White & Company's proposal, however, and White & Company backed out after looking at the land. Zayotti Affidavit, Exh. X, at 45, 58-59 (Ferguson Deposition).

45.     Ms. Ferguson cannot remember why White & Company backed out of the potential purchase and has "no idea" whether Attorney Dean mishandled the negotiations with White & Company. Id. at 59-60 (Ferguson Deposition).

46.     Ms. Ferguson also put the property located at 22 Rockhill Street, Foxborough, Massachusetts on the market, listing it with a real estate broker, "but nothing happened" because "[r]ental properties were not moving." Id. at 47-48.

47.     Attorney Dean handled the sale of property located in Wrentham, Massachusetts. Although Ms. Ferguson testified that Attorney Dean "held up the process for nearly a year", she admitted that she has no idea why the sale was delayed and she did

not claim as part of her underlying lawsuit against Attorney Dean that he was negligent in connection therewith. Id. at 46-47.

48.    Ms. Ferguson made no attempt to sell three other parcels of real estate, consisting of two properties in Foxborough located on Mechanic Street and 73 Main Street Main Street, respectively, and a vacation property located in Wilsons Mills, Maine. Id. at 48-50.

49.    In addition to attempting to sell various parcels of real estate, Attorney Dean advised Ms. Ferguson that she might seek a loan. Id. at 66.

50.    Ms. Ferguson suggested that she take out a loan from Foxborough Savings Bank, but Attorney Dean suggested that she apply instead to Equity One. Id. at 50, 63.

51.    Ms. Ferguson does not know why Attorney urged her to seek a loan from Equity One instead of Foxborough Savings Bank. Id. at 64.

52.    Equity One offered Ms. Ferguson a loan with an interest rate of 10.75%, but she declined to take the loan and instead applied to Foxborough Savings Bank where she obtained a loan with an interest rate of 9%. Id. at 89.

53.    Ms. Ferguson admits that if Attorney Dean had filed the Estate Tax Returns and requested a deferment on the payment of taxes pursuant to section 6166 on or before October 27, 1994, the Estate of Neil Ferguson would not have been assessed any penalties, and interest would have been limited to approximately $15,000. Zayotti Affidavit, Exh. W, at 6 (Memorandum of Decision); Exh. X, at 73-78 (Ferguson Deposition).

54.    If Attorney Dean had filed the Estate Tax Returns and requested a deferment on the payment of taxes pursuant to section 6166 on or before October 27,

1994, the Estate of Neil Ferguson would not have needed to sell any real property or

obtain a loan in order to pay the estate taxes. Zayotti Affidavit, Exh. X, at 86-87

(Ferguson Deposition); Exh. C, at 64-65 (Dean Deposition).

### III. ARGUMENT

**A.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits . . . show that there is

no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law." Grub v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996), citing, Kelly v.

United States, 924 F.2d 355, 357 (1st Cir. 1991); Fed. R. Civ. P. 56(c).  Under this

standard, "a party seeking summary judgment must make a preliminary showing that no

genuine issue of material fact exists.  Once the moving party has made this showing, the

nonmoving party must contradict the showing by pointing to specific facts demonstrating

that there is, indeed, a trialworthy issue." Blackie v. State of Maine, 75 F.3d 716, 721 (1st

Cir. 1996).  To avoid summary judgment, the nonmoving party "must offer the court

more than posturing and conclusory rhetoric.  This principle is brought into bold relief

when the motion targets an issue on which the nonmoving party bears the ultimate burden

of proof." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995).  "Conclusory

statements, general denials, and factual allegations not based on personal knowledge

would be insufficient to avoid summary judgment." Olympic Junior, Inc. v. David

Crystal, Inc., 463 F.2d 1141, 1146 (3rd Cir. 1972).  Similarly, conclusory statements not

supported by a statement of specific facts are insufficient. Aldahonda-Rivera v. Parke

Davis & Co., 882 F.2d 590, 594 (1st Cir. 1989).  Finally, in ruling upon a motion for

15

summary judgment, "[m]atters of law . . . are for the court to resolve." Blackie, 75 F.3d at 721.

**B.  GENERAL STAR IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL COUNTS OF PLAINTIFF'S COMPLAINT BECAUSE THE PLAINTIFF'S UNDERLYING CLAIMS "AROSE OUT OF" NEGLIGENT ACTS, ERRORS, OR OMISSIONS OF ATTORNEY DEAN WHICH TOOK PLACE NEARLY THREE YEARS PRIOR TO THE RETROACTIVE DATE OF THE POLICY AND, THEREFORE, SUCH CLAIMS WERE EXPRESSLY EXCLUDED FROM COVERAGE**

The Defendant General Star Indemnity Company is entitled to judgment as a matter of law on all counts of Plaintiff's Complaint because all of the Plaintiff's underlying claims "arose out of" the negligent acts, errors or omissions of Attorney Dean which took place on or before October 27, 1994, nearly three years prior to the September 12, 1997 Retroactive Date of the Policy and, therefore such claims were expressly excluded from coverage.

A liability insurer's duty to defend is limited to situations where the allegations in the underlying action are reasonably susceptible of an interpretation that they stated a claim covered by the policy. Peterborough Oil Co., Inc. v. Great American Ins. Co., 397 F.Supp.2d 230, 236 (D.Mass. 2005), citing, Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). "It is the source from which a plaintiff's alleged injury originates rather than the specific theories of liability alleged in the complaint which determines the insurer's duty to defend." New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co., 40 Mass.App.Ct. 722, 727 (1996). Importantly, a liability insurer has no duty to defend a claim where the claim is excluded from coverage. Id., citing, Metropolitan Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 58 Mass.App.Ct. 818, 820 (2003). Indeed, in cases where the allegations of the complaint "lie expressly outside the policy coverage . . . the insurer is relieved of the duty to

investigate or defend the claimant." MIB Group, Inc. v. Federal Ins. Co., 473 F.Supp.2d 142, 144 (D.Mass. 2006), citing, Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 788 (2003)(quoting Timpson v. Transamerica Ins. Co., 41 Mass.App.Ct. 344, 347 (1996)). Moreover, "[i]f an insurer has no duty to defend, based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify." Bagley v. Monticello Ins. Co., 430 Mass. 454, 459 (1999).

"The interpretation of an insurance contract and the application of policy language to known facts present questions of law for the judge to decide." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003), citing, Sherman v. Employers' Liab. Assur. Corp., 343 Mass. 354, 356-357 (1961); Kelleher v. American Mut. Ins. Co., 32 Mass.App.Ct. 501, 503 (1992). "Insurance policies are construed under the general rules of contract interpretation." MIB Group, Inc. v. Federal Ins. Co., 473 F.Supp.2d 142, 144 (D.Mass. 2006), citing, Brazas Sporting Arms v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir.2000). A "policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." James J. Mawn Enterprises, Inc. v. Liquor Liability Joint Underwriting Ass'n, 42 Mass. App. Ct. 417, 420 (1997), citing, Stankus v. New York Life Ins. Co., 312 Mass. 366, 369 (1942); Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 147 (1982); Nelson v. Cambridge Mut. Fire Ins. Co., 30 Mass.App.Ct. 671, 673 (1991). "While doubts regarding ambiguous policy provisions are to be resolved against the insurance company, no such strict construction should apply where the policy is 'plain and free from ambiguity.'" MIB Group, 473 F.Supp.2d at 145, citing, Fed Ins. Co. v. Raytheon, Co., 426 F.3d 491, 497 (1st Cir. 2005), quoting, Barnstable County Mut.

Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978) (because terms of exclusionary clause

are plain and free from ambiguity we do not construe them strictly against the insurer)).

Accordingly, "[w]ords in exclusionary clauses of insurance contracts should be

construed in their usual and ordinary sense." Bagley, 430 Mass. at 457, citing, Liquor

Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co., 419 Mass. 316, 320

(1995); Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978); United

Nat'l Ins. Co. v. Parish, 48 Mass.App.Ct. 67, 70 (1999). "A term is ambiguous only if it

is susceptible of more than one meaning and reasonably intelligent persons would differ

as to which meaning is the proper one." County of Barnstable v. American Financial

Corp., 51 Mass.App.Ct. 213, 215 (2001); Lumbermens Mut. Cas. Co. v. Offices

Unlimited, Inc., 419 Mass. 462, 466 (1995). "An ambiguity is not created simply

because a controversy exists between the parties." Ibid. The phrase "arising out of" as

commonly used in the context of insurance policies, has been interpreted countless times

by the courts of Massachusetts and is unambiguous. See, e.g., Fuller v. First Financial

Ins. Co., 448 Mass. 1, 5 (2006) (phrase "arising out of" is unambiguous); Metropolitan

Property and Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 58 Mass. App. Ct. 818 (2003)

(ascribing usual and ordinary meaning to phrase "arising out of" because policy language

unambiguous); Society For Christian Activities, Inc. v. Markel Ins. Co., 56 Mass. App.

Ct. 190 (2002) (policy clearly and unambiguously excludes coverage for claims for "

'bodily injury' . . . arising out of the ownership, maintenance, use or entrustment to others

of any . . . 'auto' . . . owned or operated by . . . any insured.").

It is well-settled under Massachusetts law that "[t]he phrase 'arising out of' must

be read expansively, incorporating a greater range of causation than that encompassed by

proximate cause under tort law." Bagley, 430 Mass. at 457, citing, Rischitelli v. Safety

Ins. Co., 423 Mass. 703, 704 (1996); United Nat'l Ins. Co. v. Parish, 48 Mass.App.Ct. at

70. "Indeed, cases interpreting the phrase 'arising out of' in insurance exclusionary

provisions suggest a causation more analogous to 'but for' causation, in which the court

examining the exclusion inquires whether there would have been personal injuries, and a

basis for the plaintiff's suit, in the absence of the objectionable underlying conduct."

Bagley, 430 Mass. at 457, citing, United Nat'l Ins. Co., 48 Mass.App.Ct. at 70-71; New

England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co., 40 Mass.App.Ct. 722, 727 (1996)

(without the underlying illegal acts there would have been no injuries, and, therefore, no

basis for a lawsuit against the insureds for negligence, misrepresentation, and loss of

consortium). "The usual meaning ascribed to the phrase 'arising out of' is much broader

than 'caused by'; the former phrase is considered synonymous with 'originate' or 'come

into being.'" New England Mut. Life Ins. Co., 40 Mass.App.Ct. at 726, citing, Liquor

Liab. Joint Underwriting Assn. of Mass. v. Hermitage Ins. Co., 419 Mass. at 320 & n. 4

(1995). See also, Brazas Sporting Arms, 220 F.3d 1 (1st Cir. 1999) (under Massachusetts

law, phrase "arising out of" "is generally understood to mean 'originating from,'

'growing out of,' 'flowing from,' 'incident to,' or 'having connection with'").

 Thus, for example, in Bagley the Supreme Judicial Court held that an insurer

owed no duty to defend and indemnify its insured against a claim for negligent failure to

provide reasonable security to the plaintiff against sexual assault because the underlying

claim "arose out of" an illegal act and, therefore, was barred by the policy's illegal acts

exclusion. 430 Mass. at 459. In that case, the plaintiff had become visibly intoxicated

while drinking at a truck stop bar, but the bar employees continued to serve her alcoholic

beverages and allowed another patron, also visibly intoxicated, to take the plaintiff to his motel room, where he assaulted and raped the plaintiff. Id. at 455. The plaintiff brought suit, alleging that the motel negligently failed to provide reasonable security, and recovered $2 million in damages. Id. at 455-456. Thereafter, the plaintiff sued to reach and apply the limits of the motel's insurance policy, after the insurer refused to pay the judgment. Id. at 456. Although the policy contained an "illegal acts" exclusion, which excluded coverage "for any claim which arises wholly or in part out of allegations of violation of any law," the trial court found that this exclusion did not bar plaintiff's recovery against the policy.

On appeal, the Massachusetts Supreme Judicial Court reversed, concluding that because the plaintiff's claims "and her resulting injuries, had their genesis in [the assailant] Harper's illegal acts," the policy's illegal acts exclusion precluded coverage. Id. at 458. In so holding, the SJC noted that the "phrase 'arising out of' must be read expansively" and, further, that "[i]t is the *source* from which the plaintiff's personal injury originates rather than the specific *theories of liability* alleged in the complaint which determines the insurer's duty" to defend or indemnify." Id. at 457, 458-459 (emphasis in original), citing, Continental Cas. Co. v. Richmond, 763 F.2d 1076, 1081 (9th Cir.1985) (claims of civil rights violations and wrongful death brought by three minor children all had their genesis in decedent's injuries which were caused by an excluded act); Colorado Farm Bur. Mut. Ins. Co. v. Snowbarger, 934 P.2d 909, 912 (Colo.Ct.App.1997) (no duty to defend where damages claimed as a result of negligence stemmed directly from a sexual assault that fell within the intentional acts exclusion of the policy); First Wyoming Bank v. Continental Ins. Co., 860 P.2d 1094, 1099

(Wyo.1993) (insurer's duty to defend not triggered by claim labeled "negligence" when facts demonstrated that alleged losses were caused by act for which there was no duty to defend). Accordingly, because the plaintiff's injuries arose out of an illegal act, namely, rape, the SJC ordered that the case be remanded to the superior court with judgment to enter for the insurer. 430 Mass at 460. See also, New England Mut., 40 Mass.App.Ct. at 723 (policy exclusion for personal injury claims "arising out of . . . discrimination which is unlawful" barred coverage for injuries alleged in claims for negligence, misrepresentation, and loss of consortium arising out of underlying discriminatory acts); Metropolitan Property & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 58 Mass.App.Ct. 818, 820-821 (2003) (no duty to defend or indemnify insured under homeowner's policy where injuries allegedly inflicted by insured on coworker occurred at her place of employment and policy excluded coverage for losses arising out of or in connection with insured's business activities).

Consistent with the foregoing principles, the New York Supreme Court, Appellate Division held in 30 West 15th Street Owners Corp. v. Travelers Ins. Co., 165 A.D.2d 731, 733, 563 N.Y.S.2d 784, 786 (N.Y.A.D. 1 Dept. 1990), that an insurer was not obligated to defend and indemnify its insured because "the wrongful acts which form the basis of the underlying claim . . . were neither committed during the 'Coverage Period' nor the 'Retroactive Period' . . . , but rather arose and occurred" prior to the effect date of coverage. In so holding, the court rejected the plaintiffs' argument that the claims were covered because the insured's wrongful acts, including the failure to make certain repairs and refusal to obtain permits for certain architectural work, continued into the coverage period. 165 A.D.2d at 733, 563 N.Y.S.2d at 786. Accordingly, since the liability policy

in question did not provide coverage for a risk which occurred prior to the coverage period, and since the underlying litigation "arose from differences and disputes between" the parties in the underlying action which pre-dated the coverage period afforded by the policy, the court upheld the lower court's ruling that the insurer was not obligated to defend or indemnify the plaintiffs therein. 165 A.D.2d at 733, 563 N.Y.S.2d at 786.

Similarly, in the present case, all of the Plaintiff's underlying claims "arose out of" and had their "genesis in" Attorney Dean's failure to file the estate tax returns and make an election pursuant to 26 U.S.C. § 6166 to defer the payment of the estate taxes, on or before October 27, 1994, and because those acts or omission pre-dated the September 12, 1997 Retroactive Date of the Policy by almost three years the underlying claims were not covered. Defendant's Statement of Undisputed Facts, at ¶¶ 5, 7, 32(a)-(p); 26 U.S.C. § 6166(d). Although the Plaintiff alleges that Attorney Dean's negligence continued beyond the Retroactive Date and into the Policy Period by virtue of Attorney Dean's continuing failure to secure a loan and/or to arrange for the sale of certain real property to raise the funds needed to pay the estate taxes, for the reasons stated in the 30 West 15th Street Owners case the Plaintiff's claims were nevertheless excluded from coverage because any such continuing acts, errors or omissions "originated from" or "arose out of" Attorney Dean's failure to file the estate tax returns and make the section 6166 election on or before October 27, 1994.[4]  Indeed, the superior court's ruling in the

---

[4] Additionally, the Plaintiff's allegations regarding Attorney Dean's purported negligence, in failing to sell certain real estate and/or to arrange for a loan to pay the estate taxes, are insufficient for purposes of avoiding summary judgment because they are conclusory and not supported by the record. Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 594 (1st Cir. 1989). Contrary to her allegations, the Plaintiff admitted that certain properties were listed for sale with a broker and that the "market was very still at that point, no bites whatsoever." Defendant's Statement of Undisputed Facts, at ¶ 42. Additionally, the Plaintiff admitted that negotiations for the sale of two of the parcels of real estate to George Winslow "went on and on" and "eventually came to nothing", and the Plaintiff did not like the proposal of a subsequent potential buyer. Id. at ¶¶ 43-44. The Plaintiff points to no other facts from which it may reasonably be

underlying action, specifically finding that if Attorney Dean had timely filed the estate

tax returns and "taken advantage of section 61666, no penalties would have been assessed

and interest would have been limited to approximately $15,000.00," Defendant's

Statement of Undisputed Facts, at ¶¶ 32(o) and (p), 53, is binding on the Plaintiff in this

action under the doctrine of res judicata.  See M. H. Gordon & Son, Inc. v. Alcoholic

Beverages Control Commission, 386 Mass. 64, *70 (1982) (when court of competent

jurisdiction has entered final judgment on merits of cause of action, parties to suit and

their privies are thereafter bound "not only as to every matter which was offered and

received to sustain or defeat the claim or demand, but as to any other admissible matter

which might have been offered for that purpose").  By the same token, it is undisputed

that the Plaintiff would not have needed to sell any real property or obtain any loans in

order raise money to pay the estate taxes if Attorney Dean had timely filed the estate tax

returns made the election pursuant to section 6166.  Id., at ¶¶ ¶¶ 32(a) (j), (o) and (p), 54;

26 U.S.C. §§ 6075(a) and 6166(a) and (d).  Thus, the source of all of the Plaintiff's

injuries was Attorney Dean's failure to timely file the estate tax returns and to make a

section 6166 election on or before October 27, 1994, in the absence of which there would

have been no injury.  Finally, to the extent, if any, that Plaintiff's claims are premised on

Defendant General Star's denial of coverage as to Attorney Scott, General Star is entitled

to judgment as a matter of law for the same reasons stated above that there was no

coverage of the claims against Attorney Dean.

---

inferred that Attorney Dean was negligent in any way with regard to the possible sale of any real estate, id.
at ¶¶ 45-48, nor can she point to any facts to support her allegation that Attorney Dean was negligent in
applying for a loan.  In the latter regard, Attorney Dean recommended that Plaintiff apply to Equity One for
a loan and she was approved.  That Attorney Dean urged Plaintiff to apply to Equity One instead of
Foxborough Savings Bank, and that the Plaintiff declined the Equity One loan and subsequently applied for
and obtained a better interest rate from Foxborough Savings Bank, is insufficient to establish a genuine
triable issue of fact.  Id. at ¶¶ 49-52.

Accordingly, because the Policy expressly excludes coverage for claims "arising out of negligent act(s), error(s), or omission(s) which took place prior to the "Retroactive Date" of September 12, 1997, <u>Defendant's Statement of Undisputed Facts</u>, at ¶ 4, and since the Plaintiff's underlying claims arose out of acts or omissions which pre-dated the Retroactive Date of the Policy by almost three years, there are no genuine issues of material fact to be tried and Defendant General Star is entitled to judgment as a matter of law on all counts of the Plaintiff's complaint because Defendant General Star did not owe any duty to defend or indemnify its insured.

**C.  GENERAL STAR IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL COUNTS OF PLAINTIFF'S COMPLAINT BECAUSE THE UNDERLYING CLAIMS CONSTITUTED AN UNINSURABLE "KNOWN LOSS"**

The Defendant General Star is entitled to judgment as a matter of law on all counts of the Plaintiff's Complaint for the additional reason that the underlying claims constituted an uninsurable "known loss".

"By its very nature insurance is based on contingent risks which may or may not occur." <u>SCA Services, Inc. v. Transportation Ins. Co.</u>, 419 Mass. 528, 532 (1995), <u>citing</u>, <u>Outboard Marine Corp. v. Liberty Mut. Ins. Co.</u>, 154 Ill.2d 90, 103-104, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992). "Stated differently, the basic purpose of insurance is to protect against fortuitous events and not against known certainties. Parties wager against the occurrence or nonoccurrence of a specified event; the carrier insures against a risk, not a certainty." <u>SCA</u>, 419 Mass. at 532, <u>citing</u>, <u>Bartholomew v. Appalachian Ins. Co.</u>, 655 F.2d 27, 29 (1st Cir.1981). "It follows from this general principle that an insured cannot insure against the consequences of an event which has already begun." <u>SCA</u>, 419 Mass. at 532, <u>citing</u>, <u>Appalachian Ins. Co. v. Liberty Mut. Ins. Co.</u>, 676 F.2d 56, 63 (3d Cir.

1982). "Once the risk is eliminated, the contract for insurance no longer exists." SCA, 419 Mass. at 532, citing, Bartholomew, 655 F.2d at 29. "Courts have found that the insurable risk is eliminated in the instance where an insured knows, when it purchases a policy, that there is a substantial probability that it will suffer or has already suffered a loss. At that point, the risk ceases to be contingent and becomes a probable or known loss. When the insured has evidence of a probable loss when it purchases the policy, the loss is uninsurable under that policy." SCA, 419 Mass. at 532-533, citing, Outboard Marine Corp., supra. "This rule has been recognized in Massachusetts and by leading authorities on the subject of insurance." SCA, 419 Mass. at 533, citing, Bettigole v. American Employers Ins. Co., 30 Mass.App.Ct. 272, 274 (1991); COUCH, INSURANCE §§ 1.5, 2:7 (rev. 2d ed. 1984); R. KEETON & A. WIDISS, INSURANCE LAW § 4 (1988).

"In a motion for summary judgment based on the principle of known loss, the court must determine whether any factual questions exist with respect to the insured's knowledge at the time it bought the policy. If the court finds that no fact questions exist in this regard, the issue is one of law for the court to decide." SCA, 419 Mass. at 533. "The standard is essentially a subjective one: whether the insured knew to a substantial certainty that the harm or injury would result." Massachusetts Electric Co. v. Commercial Union Ins., 2005 WL 3490756, *2 (Mass.Super. 2005), citing, Hanover Ins. Co. v. Talhouni, 413 Mass. 781, 787 (1992); Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 86 (1984); Smartfoods, Inc. v. Northbrook Property & Cas. Co., 35 Mass.App.Ct. 239, 242 (1993). Cf. SCA, 419 Mass. at 533 (no coverage for "known loss" where prior to purchasing policy, insured had actual knowledge that landfill had been declared a nuisance and was source of environmental contamination). "[A]n

insurance company need not defend the insured when the insured *knows,* when it purchases a policy, that there is a substantial probability that it the insured will suffer or has already suffered a loss." Holmes v. Seder, 1996 WL 1185100, *2 (Mass.Super. 1996) (emphasis in original). "An insurer who makes such a showing based on undisputed facts has established that there is no possibility that the claim is covered by the policy." Id.

Under circumstances similar to the present case, the Massachusetts Appeals Court in TIG Ins. Co. v. Blacker, 54 Mass. App. Ct. 683, 688 (2002), upheld entry of summary judgment in favor of a professional liability insurer due to the insured attorney's failure to disclose potentials claims on his application for insurance. Interpreting policy provisions similar to those that govern the present case, the Appeals Court noted that "[t]he crucial phrase, 'reasonable basis to foresee,' contains both subjective and objective elements. This language also appears in the insuring agreement of the TIG policy, which provides, in substance, that a claim will be covered only if, prior to the policy period, the insured did not have a 'reasonable basis to foresee' that the claim would be made." Id. at 688. In other words, the Appeals Court opined, "the provision refers to what a reasonable attorney would foresee given the insured's knowledge." Id., citing, Carosella & Ferry, P.C. vs. TIG Ins. Co., 189 F.Supp.2d 249 (E.D.Pa.2001). Although the insured had received a series of letters describing potential claims against him and was aware of proceedings against a client in which the SEC had taken the position that documents prepared by the insured as attorney for that company contained false statements, the insured argued that "at the time he filled out the insurance application, it was his understanding that the . . . letters and the SEC proceedings only evidenced his exposure

to claims under securities laws, and not for legal malpractice." Id. at 688. The Appeals Court rejected the insured's "self-serving" argument, stating "[w]e think it beyond dispute that the Wille correspondence placed [the insured] on notice of potential legal malpractice claims and that a reasonable attorney would have foreseen such claims." Id.

Similarly, in the present case, in August of 2000, Attorney Dean was asked in his Application whether, "[a]fter inquiry of each person proposed for insurance, is the Applicant aware of any circumstance(s), error(s), omission(s) or offense(s) which may result in a claim being made against the Applicant or any of its predecessors in business or any of the past or present partners, directors, officers or employees?" Defendant's Statement of Undisputed Facts, at ¶ 2. Attorney Dean responded, "No". Id. Although Attorney Dean admitted that he "thought of it as a possibility" that the circumstances under which the Estate of Neil Ferguson was being assessed penalties and interest might lead to claims being made against him, he contends that he did not think of that possibility until he received formal allegations thereof from Attorney Knudsen. Id. at ¶ 41.

Notwithstanding Attorney Dean's contentions, Attorney Dean was aware of all of the facts that resulted in the underlying claims against him long before he submitted his Application in August of 2000, and it is beyond doubt that a reasonable attorney with Attorney Dean's knowledge would have foreseen the possibility of a legal malpractice claim arising from the substantial penalties and interest incurred by the estate as a result of his inaction. Indeed, prior to October, 1994, although Attorney Dean was aware of section 6166 and that the Estate of Neil Ferguson would incur substantial penalties and interest in the absence of a deferment or other extension of time, Attorney Dean never

even reviewed section 6166, nor did he do any legal research to determine whether section 6166 might apply or whether any other form of relief might be available to the Plaintiff. Id. at ¶¶ 36-41. Moreover, the superior court specifically found in the underlying action that Attorney Dean "held himself out as qualified to prepare and file estate tax returns"; that Attorney Dean "fell below the standard of care of the average attorney practicing in this area in failing to consider and utilize section 6166 to obtain time for the estate to raise money to pay the taxes"; and that "[a]n attorney competent in the preparation and filing of estate tax returns would have known in 1994 that section 6166 was likely available to defer the filing of the returns and the payment of a substantial portion of the taxes, and would have advised [Ms. Ferguson] to take that route", id. at ¶¶ 32(b), (k), are preclusive in this action in establishing that "a reasonable attorney would have foreseen such claims." TIG Ins. Co., 54 Mass. App. Ct. at 688.

To the extent any doubt remains regarding Attorney Dean's knowledge of the circumstances, errors, omissions or offenses which resulted in the underlying claim against him, Attorney Dean must nevertheless be deemed to have known thereof in light of his spoliation of the only documentary evidence that could potentially have been used to refute Attorney Dean's self-serving testimony that he did not consider the possibility of claims being made against him until he actually received the Plaintiff's formal demand by means of Attorney Knudsen's letters. See Baliotis v. McNeil, 870 F. Supp. 1285, 1290 n.10 (M.D.Pa. 1994) (appropriate to sanction nominal defendant, the homeowner, in a subrogation claim actually litigated by its insurer, Liberty Mutual, which was responsible for the spoliation). Specifically, in the spring of 2006, during the pendency of this action, all of Attorney Dean's files pertaining to the underlying action were

"mistakenly shredded along with other closed files". Defendant's Statement of Undisputed Facts, at ¶ 34. Because Attorney Dean had a duty to preserve the evidence, and since General Star has been prejudiced by its destruction, Attorney Dean's self-serving assertions concerning his lack of knowledge must be disregarded as a sanction for his spoliation of the evidence.

Accordingly, because Attorney Dean knew of all of the facts that gave rise to the underlying claims against him long before he submitted his Application, and since Attorney Dean spoliated all of his files which could have included documentary evidence conclusively establishing his knowledge of such claims, there are no genuine issues of material fact and General Star is entitled to judgment as a matter of law dismissing all counts of the Plaintiff's Complaint because the underlying claims constituted an uninsurable "known loss".

**D.  GENERAL STAR IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIMS PURSUANT TO MASS. GEN. L. CH. 93A AND 176D BECAUSE THE UNDERLYING CLAIMS WERE EXPRESSLY EXCLUDED FROM COVERAGE AND GENERAL STAR'S DISCLAIMER WAS MADE IN GOOD FAITH**

Defendant General Star is entitled to judgment as a matter of law on Plaintiff's claims pursuant to Mass. Gen. L. ch. 93A and 176D because the Plaintiff's underlying claims were expressly excluded from coverage and General Star's disclaimer was made in good faith.

Where a "policy provides no coverage, an insurer has no obligation to pay a judgment against its insured." Zahiri v. General Acc. Ins. Co. of America, 2002 WL 2021576, *4 (Mass.App.Ct. 2002), citing, Rideout v. Crum & Forster Commercial Ins., 417 Mass. 757, 760 (1994). Where, as here, an insurer has no obligation as a matter of law to defend or indemnify its insured, a plaintiff's "claims under Mass. Gen. L. chapter

93A and chapter 176D fail as well." <u>Dryden Oil Co. of New England, Inc. v. Travelers</u> <u>Indem. Co.,</u> 91 F.3d 278, 290 (1st Cir. 1996). For the reasons stated at length above, General Star had no duty to defend or indemnify its insured against the underlying claims and, therefore, General Star is entitled to judgment as a matter of law on Plaintiff's claims under Mass. Gen. L. ch. 93A and ch. 176D.

Moreover, to the extent, if any, the Plaintiff claims in this case that Defendant General Star failed to timely respond to notice of the underlying claims, such claims are not borne out by the undisputed facts and, therefore, General Star is entitled to judgment as a matter of law. The undisputed facts establish that in early September, 2001, in response to Attorney Dean's notice of the underlying claim and within the twenty-day period for responding to the complaint in the underlying litigation, General Star contacted Attorney Dean by telephone and advised him that coverage was disclaimed. Thereafter, by letter dated December 6, 2001 to Attorney Dean, General Star confirmed the specific reasons for the disclaimer. <u>Defendant's Statement of Undisputed Facts,</u> at ¶¶10-13. Similarly, when Attorney Scott was added to the lawsuit as a party defendant, General Star contacted Attorney Scott and advised him that coverage was denied for the same reasons stated with respect to the denial of coverage as to Attorney Dean, a copy of which Attorney Scott had already received. <u>Id.</u> at ¶ 25. Thus, any claim that General Star failed to timely respond to notice of the underlying claims is without merit.

Moreover, even if General Star had failed to timely respond to notice from its insureds of the underlying claims, which it did not, General Star is nevertheless entitled to judgment as a matter of law on Plaintiff's claims pursuant to Mass. Gen. L. ch. 93A and ch. 176D because the Plaintiff cannot establish, as she must, "*both* that an unfair

trade practice occurred *and* that the unfair trade practice resulted in a loss to the claimant." Dryden Oil, 91 F.3d at 290 (emphasis in original), citing, Alan Corp. v. International Surplus Lines Ins. Co., 22 F.3d 339, 343 (1st Cir. 1994). In other words, assuming *arguendo* that General Star delayed in responding and, further, that such delay amounted to unfair trade practices, a matter this Court need not address, General Star is still entitled to judgment as a matter of law because the Plaintiff cannot establish any loss as a result of the alleged unfair trade practices where General Star was under no duty to defend or indemnify. Dryden Oil, 91 F.3d at 290. See also, Zahiri v. General Acc. Ins. Co. of America, 2002 WL 2021576, *4 (Mass.App.Ct. 2002) (where there was no coverage under policy plaintiff could offer no evidence to show prejudice as a result of insurer's failure to respond to 93A demand letter within proscribed thirty day limit is deficient).

Finally, even if General Star had erroneously denied coverage, which it did not, General Star would nevertheless be entitled to judgment as a matter of law on Plaintiff's claims pursuant to Mass. Gen. L. ch. 93A and 176D because "its disclaimer was based on a reasonable or plausible interpretation of the policy. . . ." Peterborough Oil, 397 F.Supp.2d at 244, citing, Polaroid Corp. v. Travelers Indemnity Co., 414 Mass. 747, 754 (1993) ("[A]n insurer could reasonably have concluded that no aspect of [the] claims were within the scope of its coverage and that, therefore, there was no duty to defend. . . . In such circumstances, an insurer's refusal to defend, even if ultimately determined to be wrong, does not support a claim under G.L. c. 93A"); Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987) ("An insurance company which in good faith denied a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to

31

have committed a violation of G.L. c. 93A"). Indeed, "[a] denial of coverage, made in good faith, "cannot ordinarily be said to have committed a violation of G.L. c. 93A." Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468; TransAmerica Ins. Co. v. KMS Patriots, L.P., 52 Mass.App.Ct. 189, 197 (2001). See also, Zahiri, 2002 WL 2021576, *4 ("We conclude therefore that General Accident was not obligated to make a reasonable settlement offer to Zahiri. There is nothing in the record to show that General Accident acted in violation of G.L. c. 93A by engaging in unfair or deceptive insurance practices as defined by G.L. c. 176D, § (3)(9), when it did not make a reasonable settlement offer where it believed in good faith no liability existed.").

The undisputed facts in the present case establish that General Star disclaimed coverage in good faith, based on a plausible interpretation of its policy. As between General Star, Summit, and Attorney Dowd, the Plaintiff's underlying claims were reviewed on no fewer than four separate occasions. Defendant's Statement of Undisputed Facts, at ¶¶ 12, 16-20, 26-27. That General Star disclaimed coverage in good faith is further established by virtue of the fact that Summit, on behalf of General Star, retained outside counsel Attorney Dowd, who specializes in insurance coverage, to render a coverage opinion, wherein Attorney Dowd fully analyzed the issue in a 5½ opinion letter and recommended an "unequivocal reiteration of GenStar disclaimer". Id. at ¶ 19. Additionally, after further review prompted by correspondence from Plaintiff's counsel, Attorney Dowd opined to General Star that "the challenge is without merit and probably a last-witch shakedown. Your disclaimer is solid." Id. at ¶ 26. Accordingly, even if General Star had interpreted its Policy incorrectly when it denied coverage,

General Star's interpretation could not be deemed unreasonable because the legal precedent described by Attorney Dowd in his coverage opinion supported the conclusion that there was no coverage and "the insurer sought and relied upon advice of outside counsel; and there was no evidence of bad faith on the insurer's part." White v. American Cas. Ins. Co., 53 Mass. App. Ct. 56, 756 N.E.2d 1208, 1214 (2001).

Accordingly, for the additional reasons stated herein there are no genuine issues of material fact and General Star is entitled to judgment as a matter of law on Plaintiff's claims pursuant to Mass. gen. L. ch. 93A and ch. 176D.

## IV. CONCLUSION

WHEREFORE, based upon the foregoing points and authorities the Defendant General Star Indemnity Company respectfully requests that this Honorable Court grant its Motion for Summary Judgment.

DEFENDANT GENERAL STAR
INDEMNITY COMPANY

Respectfully submitted,

Richard Kirby, BBO# 273000
Matthew P. Zayotti, BBO# 638265
Keegan Werlin LLP
265 Franklin Street
Boston, Massachusetts 02110-3113
(617) 951-1400

Dated: November 7, 2007

CERTIFICATE OF SERVICE
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 7, 2007.